IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 6, 2006

## STATE OF TENNESSEE v. JAMES HOWARD THEUS, III

**Direct Appeal from the Circuit Court for Madison County**
**No. 00-905     Donald H. Allen, Judge**

---

**No. W2005-02426-CCA-R3-CD  - Filed October 2, 2006**

---

The defendant, James Howard Theus, III, entered a best interest plea to facilitation of rape of a child. He was sentenced to eight years in the Tennessee Department of Correction, suspended after service of eleven months and twenty-nine days, with the remainder on intensive probation.  Thereafter, the trial court revoked the defendant's probation and placed his sentence into effect.  On appeal, the defendant challenges the trial court's revocation of his probation.  Upon our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined.  GARY R. WADE, P.J., not participating.

Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, James Howard Theus, III.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### BACKGROUND

The defendant was indicted for rape of a child and especially aggravated sexual exploitation of a minor.  The defendant entered a best-interest plea in the first count to the lesser-included offense of facilitation of rape of a child and the sexual exploitation charge was dismissed. He was sentenced to eight years in the Department of Correction, suspended after service of eleven months and twenty-nine days, with the remainder to be served on intensive probation.  Among the conditions of the defendant's probation were that he obey all laws of the United States, as well as any municipal ordinances;  not use intoxicants of any kind to excess, or use or have in his possession narcotic drugs

or marijuana; and observe any special conditions imposed by the court, including being placed on the sex offender registry.

On January 8th and March 13, 2003, the defendant's probation officer filed probation violation reports alleging that the defendant had violated various conditions of his probation. On April 22, 2003, the trial court issued an order dismissing the aforementioned probation violations alleged in the reports. On August 15, 2005, the defendant's probation officer filed another probation violation report alleging that the defendant had been with two underage teenagers in a motel room after 2:00 a.m., and he had waved knives at the teenagers in a threatening manner. On September 19, 2005, a probation revocation hearing was held in regard to the 2005 violations.

At the revocation hearing, Russell Phillips, the defendant's probation officer, testified that he took out a probation violation warrant against the defendant based on "[c]ontributing to the delinquency of two minors, using intoxicants and not observing special conditions [of his probation]," the special condition being that he stay away from minors. Mr. Phillips stated that the defendant was aware of the fact that he had to stay away from minors because that condition was listed on the sex offender directives and the sex offender registry updates, which he signed. Mr. Phillips further stated that the defendant was arrested on August 15, 2005 for contributing to the delinquency of a minor.[1] Mr. Phillips explained that he had called the defendant in to discuss the incident when he received a call from a detective concerning the defendant's contact with the minors. Mr. Phillips stated that after he received the call, he called the police and the defendant turned himself in.

Mr. Phillips testified that one of the special conditions of the defendant's probation was that he follow his probation officer's directives, and one of those directives was that he stay away from any individual under eighteen. Mr. Phillips stated that he had general conversations with the defendant each month reminding him that he was supposed to stay away from minors.

On cross-examination, Mr. Phillips stated that the Tennessee Bureau of Investigation was supposed to take the defendant off the sex offender registry "based on the wording of facilitation" but never did. Mr. Phillips elaborated that "[a]ccording to my understanding, facilitation was not in the wording of the sex offender things, but they put it on this year on August 1st," and it applied retroactively.[2] Mr. Phillips testified that he received anonymous calls saying that the defendant was near the youth community center and he would tell the defendant he "better not get in trouble or I'm going to violate [you]." Mr. Phillips admitted, however, that he never saw the defendant at the youth

---

[1] We note that a grand jury returned a no true bill on the charge against the defendant. However, the grand jury's failure to return an indictment does not affect the trial court's probation revocation decision, as the trial court heard and accredited the witnesses' testimony.

[2] It appears that Mr. Phillips' conclusion that the defendant was not supposed to be on the sex offender registry was incorrect. Although the new wording is more explicit, the statutes at the time the defendant pled guilty indicate that facilitation of rape of a child was a sexual offense. *See* Tenn. Code Ann. § 40-39-102(3)(A)(xv) and (xvii)(1997).

center. On redirect examination, Mr. Phillips stated that the defendant sold clothes for a living, but he did not have a physical shop so he set up a stand.

C.K.[3] testified that he was sixteen years old, and he knew the defendant from Youth Village. C.K. recalled that he saw the defendant during the daytime on August 7, 2005 while he and his fifteen-year-old friend J.C. were talking to another friend on North Royal Street in Jackson, Tennessee. C.K. said that the defendant drove by and then stopped to talk to them, and they asked him for a ride to a business named Sonny's where they went inside and purchased some drinks. When C.K. and J.C. returned from inside Sonny's, the defendant asked them if they wanted to help him sell clothes and CDs.

C.K. testified that after they helped the defendant sell the items, the defendant said "we'll go riding around and find some people to talk to and hangout with for a minute," and the defendant took the teenagers to his motel room at the Days Inn. C.K. stated that it was nighttime when they arrived at the motel room and they stayed there for a while, and the defendant had a lady friend come over. C.K. said that the defendant's lady friend left around 11:00 p.m., and he told the defendant that it was time for them to go home. However, the defendant said he wanted to wait for his lady friend to come back before taking them home. C.K. stated that the defendant's lady friend never returned so he and J.C. stayed all night at the motel. C.K. explained that he and J.C. slept in one bed and the defendant slept in the other bed. C.K. testified that during the night they saw the defendant naked on his bed "playing with hi[m]self."

Because the defendant wanted the boys to help him sell again, C.K. testified that on the morning of August 8, 2005, the defendant drove him to his house to get some clothes. Thereafter, they went back to the defendant's motel room. C.K. testified that they went swimming at the motel and then headed home, but the defendant asked for their help selling clothes again. C.K. stated that he and J.C. both got permission to stay a second night at the motel. C.K. said that later on in the evening he and J.C. decided to leave because they "got suspicious." He said that they asked the defendant if they could get some air "while he was smoking and drinking." Then, once they got outside the motel room, they ran to a gas station and C.K. called his uncle to come pick them up. C.K. said that his uncle told them he could not pick them up so they walked to the Waffle House. At the Waffle House, C.K. and J.C. saw a police officer and told him what happened.

When asked why he and J.C. were suspicious, C.K. stated that they were afraid the defendant was going to molest them. C.K. said that the defendant had been drinking liquor and smoking marijuana when he and J.C. left the motel room. C.K. also stated that the defendant offered them liquor and marijuana, but they did not take any. C.K. further stated that the defendant touched his behind and told him "good job" after C.K. hustled a CD. C.K. testified he saw the defendant naked and playing with himself the second night, but the defendant noticed that C.K. saw him so he put his clothes on.

---

[3] It is the policy of this court to not reveal the names of minors involved in sexual offenses.

On cross-examination, C.K. testified that he and J.C. did not leave the motel after seeing the defendant naked the first time because they were afraid the defendant might grab them and prevent them from leaving. However, he admitted that he went back to sleep. C.K. acknowledged that the next morning the defendant took him home to get more clothes, and he did not tell his family about what had happened the previous night. C.K. conceded that he knew something about a charge in the defendant's past, but he had "recently forgot about it." He further acknowledged that his mother reminded him about the defendant's past after he had returned home. C.K. testified that the defendant waved knives at them but did not say anything while waving them. C.K. further testified that his mother got angry at him for hanging out with the defendant. C.K. said that his mother was also angry that the defendant did not fairly compensate him for helping sell his goods.

At the conclusion of the hearing, the trial court made the following findings:

[The defendant] was ordered to follow certain conditions of probation and . . . two of those rules [were] "I will not use intoxicants of any kind to excess or have in my possession or use narcotic drugs or marijuana." That was one of the specific rules of probation that he had to follow. Also, another rule is that he would observe any special conditions imposed by the Court. Of course, he was found to have been a sex offender because of the fact that he was convicted of this particular offense and he was placed under the Sex Offender Directives. Now, . . . Rule No. 9 says, "I will not enter into contact with any child under 18 unless an adult is present whom my officer and my treatment provider have approved in advance in writing as a chaperone." So, I do credit the testimony of Mr. Phillips when he's indicated that he has had conversations with [the defendant], general conversations on more than one occasion, that he cannot be in any kind of presence or have any contact with any child under 18 years of age. That's one of the special conditions that he was ordered to follow.

Now, the Court does credit the testimony of Mr. Phillips and also I credit the testimony of [C.K.]. Now, [C.K.] has testified that back early August of this year that he was in the company of [the defendant], he and another friend, 15 year old friend [J.C.], and on that particular occasion that the defendant . . . stopped them and talked to them, allowed them to ride in the vehicle with him, later carried these individuals, these two minor children, to [the defendant's] hotel room at the Days Inn on Hollywood so that they could hangout. He indicated also that they wound up . . . . spending . . . the night in the presence of [the defendant]. It's also indicated that [the defendant] inappropriately exposed himself to these 15 and 16 year old children during the middle of the night. Also, it does appear that they spent another night with him there at the hotel room and on that occasion he also offered both of these young men alcohol and also offered them both marijuana. And according to [C.K.'s] testimony, the defendant was drinking liquor there in their presence and also smoking marijuana there in their presence there in this hotel room.

Now, you know, these special conditions are there because [the defendant] was not supposed to be in the company of minor children, especially not to be exposing them to alcohol, drugs, narcotics, and, of course, he's not even supposed to be using marijuana himself and certainly not supposed to be using intoxicants in excess, but it does appear to the Court that he was violating both of those rules by drinking liquor and also smoking marijuana there in the presence of these two children.

Of course, also, as I've stated, he exposed himself to these minor children and again that's the reason we have these special conditions is because we don't want [the defendant] to even be in contact with minor children. Unfortunately, [the defendant] has chosen on two different occasions even to be in contact with minor children.

Now, also, he failed to report any incidental contact which the rule says that if he does come in contact that he is to report this incidental contact to his probation officer which he did not report. Of course, this was more than just incidental contact, this was a deliberate, willful contact in violation of the Court's orders. Of course, also, as I mentioned, he has – there is no positive drug screen for marijuana, but I do credit the testimony of [C.K.] when he says that [the defendant] was smoking marijuana there in his presence. . . .

Now, as far as him [waving] the knives in the presence of these individuals in a threatening manner, that's the other allegation in the warrant, but it doesn't appear to the Court that he was threatening these minor children. Obviously they may have been placed in some fear as a result of his having these knives there in their presence, but I don't find that he threatened these children in any way. Obviously the testimony has been that they did become concerned and certainly became suspicious by the way he was acting that something perhaps worse might have occurred and that was the reason they did finally leave the company of [the defendant].

But the Court does find that [the defendant] clearly understood from his conversations with Mr. Phillips and also the rules that have been gone over with . . . his previous probation officer[s], . . . that clearly [the defendant] knew that he was not to be anywhere involved with minor children.

So the Court finds that he has, in fact, violated the terms and conditions of his probation in a substantial way. The Court feels like his probation should be revoked and he should be ordered to serve this sentence in the Tennessee Department of Corrections. . . .

## ANALYSIS

On appeal, the defendant argues that the trial court erred by revoking his probation and placing his eight-year sentence into effect. Specifically, he asserts that C.K. was completely non-credible and his testimony should not have been accredited by the trial court. Initially, we note that the decision to revoke probation lies in the sound discretion of the trial court. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). The trial court may revoke probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his or her probation. *See* Tenn. Code Ann. §§ 40-35-310,-311(e); *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Revocation of probation is subject to an abuse of discretion standard of review, rather than a de novo standard. *Id.* If the trial judge has exercised "conscientious judgment in making the decision rather than acting arbitrarily," then there is no abuse of discretion. *Leach*, 914 S.W.2d at 107. Discretion is abused only if the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred. *Harkins*, 811 S.W.2d at 82; *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

In the present case, the trial court specifically stated that it accredited the testimony of both witnesses, Mr. Phillips and C.K. In a probation revocation hearing, the credibility of the witnesses is for the determination of the trial court. *State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994). According to Mr. Phillips' testimony, the defendant violated the conditions of his probation by using intoxicants and having contact with minor children. According to C.K.'s testimony, he and another minor were approached by the defendant and asked to help him sell his merchandise. Afterward, the defendant took the two minors back to his motel room where they later witnessed the defendant naked on his bed touching himself. The next day the boys again helped the defendant sell his merchandise during which he touched C.K. on the behind. That night, the defendant drank liquor and smoked marijuana in front of the minors and offered the same to the boys. The trial court having accredited Mr. Phillips' and C.K.'s testimony, it is our view the record contains substantial evidence to support the trial court's conclusion that the defendant violated the conditions of his probation.

## CONCLUSION

Based upon our review of the record and the parties' briefs, we affirm the trial court's revocation of the defendant's probation.

 

 

_____
J.C. McLIN, JUDGE